**HARPER LAW, PLC**
Jon V. Harper (#1378)
Denise Dalton (#9610)
P.O. Box 581468
Salt Lake City, UT  84158
Tel: (801) 910-4357
Tel: (801) 910-4358
jharper@jonharperlaw.com
ddalton@jonharperlaw.com

**THE SULTZER LAW GROUP P.C.**
Jason P. Sultzer
Joseph Lipari
Adam Ganelli
Jeremy Francis
85 Civic Center Plaza, Suite 104
Poughkeepsie, NY  12601
Tel: (845) 483-7100
Fax: (888) 749-7747
seltzer@thesultzerlawgroup.com

Attorneys for Plaintiff and the Class

**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| SECURITY SYSTEMS, INC, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>ALDER HOLDINGS, LLC, and ALARM PROTECTION TECHNOLOGY, LLC.,<br><br>Defendants. | **COMPLAINT**<br><br>**(PROPOSED CLASS ACTION)**<br><br>JURY TRIAL DEMANDED<br><br><br>Case No. 2:18-cv-00664 (CW)<br><br>Honorable Clark Waddoups |

Plaintiff, individually and on behalf of all others similarly situated, by its attorneys, alleges the following upon information and belief, except for those allegations pertaining to Plaintiff, which are based on personal knowledge:

**PARTIES**

1.  Plaintiff Security Systems, Inc. ("SSI") is a corporation formed under the laws of the State of Connecticut, with its principal place of business in Middletown, Connecticut. For more than twenty years, SSI has been in the business of selling, servicing and monitoring

residential and commercial security alarm systems throughout the United States.

2. Alarm Protection Technology, LLC ("APT Utah") is a Utah limited liability company with its principal place of business in Utah. APT Utah is in the business of monitoring residential and commercial security alarm systems in Alaska and potentially other states.

3. Alder Holdings, LLC is a Utah limited liability company with its principal place of business in West Orem, Utah. Alder is the alter ego of APT Utah. All of APT's customer services employees now work for Alder. All of APT's information technology employees now work for Alder. All of APT's executive staff now works for Alder. Alder uses the same office space that APT used. Alder manages APT's accounts without any written agreement between the two. Alder collects the money that is generated by APT's accounts. In fact, 78 different "Alarm Protection" entities were created so that if one entity was sued, that entity could transfer all of its assets to another entity prior to claiming bankruptcy. APT currently has no employees.

4. Whenever reference in this Complaint is made to any act or transaction of any Defendant, such allegation shall also include the principals, officers, directors, employees, agents and representatives of that Defendant, who committed, knew of, performed, authorized, ratified and directed such acts or transactions on behalf of that Defendant while actively engaged in the scope of their duties.

5. At all times mentioned herein, each of the Defendants herein were and acted as the agents, servants and employees of their co-defendants, and in doing the things hereinafter alleged, were acting within the course and scope of their authority as such agents, servants and employees and with the permission and consent of their co-defendants.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. section 1332(d) in that: (1) this is a class action involving more than 100 Class Members; (2) Plaintiff is a corporation incorporated under the laws of Connecticut, and Defendants are

corporations incorporated in the State of Utah; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

7. This Court has personal jurisdiction over Defendants because Defendants are incorporated and headquartered in Utah, transact business in the State of Utah, contract to supply goods and services within the State of Utah, and supply goods and services within the State of Utah.

8. Venue is proper in this District under 28 USC § 1391 because one or more Defendants reside in this District and a substantial amount of the events or omissions giving rise to the claim occurred in this District.

## DEFENDANTS' MISCONDUCT

9. Several SSI customers informed SSI that the customers had cancelled their contracts with SSI after being informed, *inter alia*, that SSI no longer serviced their residential area, that SSI had gone out of business, that SSI had assigned their account to APT, or that SSI could not adequately monitor their alarm.

10. After receiving these customer reports, SSI became concerned that it was and continues to be the victim of systematic poaching by Defendants.

11. Ultimately, SSI learned that APT had fraudulently taken over at least 38 SSI customer accounts in at least eight states (Alabama, Arizona, Texas, Louisiana, Tennessee, and Arkansas, Florida, and Georgia).

12. SSI is informed and believes and thereon alleges that APT induced SSI's customers to request cancellation of their contracts as follows:

    a. APT has falsely represented to SSI's customers that:

        i. SSI has gone out of business;

3

    ii.  SSI assigned SSI customer accounts to APT;

    iii.  SSI could not adequately monitor the customer's alarm;

    iv.  SSI no longer services the area in which the customer lives.

  b.  APT offered to pay SSI customers to breach their contracts with SSI.

  13.  SSI demanded that APT cease and desist from the wrongful conduct described above, and specifically demanded that APT stop targeting SSI's customers, that APT stop making misrepresentations about SSI, and that APT stop offering money to SSI's customers to breach their contracts with SSI. APT rejected SSI's demands and continues to engage in the alleged wrongful conduct.

  14.  Indeed, a jury verdict of over $1.4 million has been rendered against defendants for strikingly similar conduct. *Security Alarm Fin. Enterprises, LLP v. Alarm Protection Tech, LLC, et al.*, No. 3:13-cv-00102 ECF No.682 (D. Alaska March 23, 2017) (Judgment against defendants in the amount of $1,434,621.00).

  15.  SSI acquires customers by, *inter alia*, purchasing customer accounts from other security alarm monitoring companies. As a direct result of APT's unlawful conduct and interference with SSI's contracts with its customers, SSI's investment in acquiring these accounts was diminished.

  16.  Also, as a direct result of SPT's misconduct, SSI has lost current and future revenue from the cancelled monitoring contracts

  17.  In addition, SSI has suffered injury and harm to its reputation and incurred costs associated with its extensive efforts to mitigate against such injury and harm.

## CLASS ALLEGATIONS

18. Plaintiff brings this matter on behalf of itself and similarly situated security alarm installation and monitoring businesses throughout the United States. As detailed at length in this Complaint, Defendants orchestrated deceptive and fraudulent practices in order to take over SSI's Alarm customer accounts. Upon information and belief, Defendants have used identical techniques to initiate takeovers of customer accounts from numerous other security alarm and monitoring businesses throughout the United States. Accordingly, this Complaint is well situated for classwide resolution.

19. The Class is defined as all security and alarm companies anywhere in the United States during the Class Period (the "Class") from whom Defendants fraudulently acquired customers as described herein.

20. The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy as follows:

    a. **Numerosity**: Class Members are so numerous that joinder of all members is impracticable. Plaintiff believes that there are hundreds of security alarm companies who are Class Members described above who have been damaged by Defendants' deceptive and misleading practices.

    b. **Commonality**: The questions of law and fact common to the Class Members which predominate over any questions that may affect individual Class Members include, but are not limited to:

        i. Whether Defendants are responsible for the conduct alleged herein that was uniformly directed at all Class Members;

      ii.    Whether Defendants' misconduct set forth in this Complaint demonstrates that Defendants have engaged in unfair, fraudulent, or unlawful business practices with respect to acquiring security alarm customers and accounts;

      iii.    Whether Defendants made false and/or misleading statements regarding the Class Members in order to induce their customers to break alarm monitoring contracts to them;

      iv.    Whether Plaintiff and the Class are entitled to money damages under the same causes of action as the other Class Members.

c. **Typicality**: Plaintiff is a member of the Class. Plaintiff's claims are typical of the claims of each Class Member in that Defendants used similar deceptive, fraudulent, and misleading tactics to initiate takeovers of customer accounts from each of the Class Members. Plaintiff is entitled to relief under the same causes of action as the other Class Members.

d. **Adequacy**: Plaintiff is an adequate Class representative because its interests do not conflict with the interests of the Class Members it seeks to represent; SSI's claims are common to all members of the Class and it has a strong interest in vindicating its rights; SSI has retained counsel competent and experienced in complex class action litigation and they intend to vigorously prosecute this action.

e. **Predominance**: Pursuant to Rule 23(b)(3), common issues of law and fact identified above predominate over any other questions affecting only individual members of the Class. The Class issues fully predominate over any individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendants' deceptive and misleading

        customer poaching practices.

21. Superiority: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

    a. The joinder of hundreds of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

    b. The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions;

    c. When Defendants' liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

    d. This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

    e. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

    f. This class action will assure uniformity of decisions among Class Members;

  g. The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

  h. Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action; and

  i. It would be desirable to concentrate in this single venue the litigation of all plaintiffs who were harmed by Defendants' uniform fraudulent and deceptive customer poaching.

22. Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## **INJUNCTIVE CLASS RELIEF**

23. Rules 23(b)(1) and (2) contemplate a class action for purposes of seeking classwide injunctive relief. Here, the Defendants have misled consumers about the services of SSI and similarly situated plaintiffs. Since Defendants' conduct has been uniformly directed at all such plaintiffs in the United States, and the conduct continues presently, injunctive relief on a classwide basis is a viable and suitable solution to remedy Defendants' continuing misconduct.

24. The injunctive Class is properly brought and should be maintained as a class action under Rule 23(a), and the injunctive Class satisfies the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

a. **Numerosity**: Individual joinder of the injunctive Class Members would be wholly impracticable. Defendants have caused harm to Class Members throughout the United States.

b. **Commonality**: Questions of law and fact are common to members of the Class. Defendants' misconduct was uniformly directed at all similarly situated plaintiffs. Thus, all members of the Class have a common cause against Defendants to stop their wrongful conduct through an injunction. Since the issues presented by this injunctive Class deal exclusively with Defendants' misconduct, resolution of these questions would necessarily be common to the entire Class. Moreover, there are common questions of law and fact inherent in the resolution of the proposed injunctive class, including, *inter alia*:

    i. Resolution of the issues presented in the 23(b)(3) class;

    ii. Whether members of the Class will continue to suffer harm by virtue of Defendants' wrongful conduct; and

    iii. Whether, on equitable grounds, Defendants should be prevented from continuing to engage in their wrongful conduct.

c. **Typicality**: Plaintiffs' claims are typical of the claims of the injunctive Class because their claims arise from the same course of conduct. SSI is a typical representative of the Class because, like all members of the injunctive Class, it was harmed by Defendants' acts which have affected similarly situated plaintiffs throughout the United States.

d. **Adequacy**: Plaintiff will fairly and adequately represent and protect the interests of the injunctive Class. Its claims are common to all members of the injunctive Class and they have a strong interest in vindicating its rights. In addition, Plaintiff

and the Class are represented by counsel who is competent and experienced in both consumer protection and class action litigation.

25. The injunctive Class is properly brought and should be maintained as a class action under Rule 23(b)(2) because Plaintiff seeks injunctive relief on behalf of the Class Members on grounds generally applicable to the entire injunctive Class. Certification under Rule 23(b)(2) is appropriate because Defendants acted and refuse to act in a manner that applies generally to the injunctive Class. Any final injunctive relief or declaratory relief would benefit the entire injunctive Class as Defendants would be prevented from continuing its wrongful practices.

**FIRST CAUSE OF ACTION**

**VIOLATION OF THE CONNECTICUT UNFAIR TRADE PRACTICES ACT, CONN. GEN. STAT. ANN.§ 42-LLOA, *ET SEQ.* ("CUTPA")**

**(On Behalf of Plaintiff and the Class)**

26. Plaintiff repeats and realleges all prior allegations as though fully pled herein.

27. Plaintiff brings this count individually and on behalf of all Class Members.

28. Plaintiff is a "person" within the meaning of Conn. Gen. Stat. Ann. § 42-110a.

29. Defendants are engaged in "trade" and "commerce" within the meaning of Conn. Gen. Stat. Ann. § 42-110a as they install, service, and monitor alarms in Connecticut and throughout the United States.

30. Defendants disparaged and continue to disparage SSI's goods and services by making false statements and misleading representations of fact, e.g. that SSI no longer serviced their residential area, that SSI had gone out of business, that SSI had assigned their account to APT, or that SSI could not adequately monitor their alarm.

31. Defendants engaged in and continued to engage in conduct which created and

continues to create a likelihood of confusion or of misunderstanding that damaged SSI in connection with the sale of its goods or services, including but not limited to the loss of customer accounts and contracts.

32. Defendants have used and continue to use deception, fraud, false pretense, false promise, and misrepresentations, and knowingly concealed, suppressed, or omitted material facts with the intent that others rely upon the concealment, suppression or omission in connection with the sale or advertisement of their goods or services.

33. Defendants misrepresented and continue to misrepresent the authority of their salesmen, representatives, or agents to negotiate the terms of SSI's contracts with its customers.

34. Defendants used and continue to use unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce.

35. Plaintiff and Defendants are competitors in the alarm sales, servicing, and monitoring industry.

36. Defendants' acts and practices offend public policy as established by statute and common law, including, but not limited to, common law intentional interference with contract and defamation.

37. Defendants' acts and practices are immoral, unethical, oppressive and unscrupulous.

38. No benefit to consumers or competition results from Defendants' conduct.

39. The foregoing unfair and deceptive practices directly, foreseeably and proximately caused and continue to cause Plaintiff and the Class Members to suffer ascertainable loss, including the following: loss of investment in the acquisition of accounts; loss of and future revenue from the cancelled monitoring contracts; harm to their reputation; and costs to mitigate

against such injury and harm.

40. Plaintiff and Class Members are entitled to recover damages and other appropriate relief, as alleged below.

## SECOND CAUSE OF ACTION
## UNFAIR COMPETITION – UTAH COMMON LAW

### (On Behalf of Plaintiff and the Class)

41. Plaintiff repeats and realleges all prior allegations as though fully pled herein.

42. Defendants' deceptive sales tactics aimed at SSI as alleged above were and are for the purpose of passing off, palming off, imitating or substituting Alder's alarm systems and monitoring services for those of SSI and misappropriating SSI's customers through deception and misrepresentation.

43. Defendants' deceptive sales tactics aimed at SSI as alleged above caused and continue to cause confusion and induced and continue to induce SSI customers to enter into contractual arrangements with Alder for alarm services, thinking that the alarm services were being provided by SSI.

44. Defendants' actions towards SSI and its customers caused and continue to cause confusion or were likely to cause confusion in the minds of a substantial number of SSI customers.

45. Defendants' tortious misconduct has caused and continues to cause SSI monetary losses and other damages or injury in an amount to be determined at trial.

46. Defendants' actions were and are the result of willful and malicious or intentionally fraudulent conduct, or conduct that manifests a knowing and reckless indifference toward, and a disregard of the rights of Plaintiff and the Class so as to justify the assessment of increased, exemplary, and punitive damages against Defendants in an amount to be determined

at trial.

## THIRD CAUSE OF ACTION

## (INTENTIONAL INTERFERENCE WITH ECONOMIC RELATIONS)

### (On Behalf of Plaintiff and the Class)

47. Plaintiff repeats and realleges all prior allegations as though fully pled herein.

48. Plaintiff brings this claim individually and on behalf of all Class Members.

49. SSI and Class Members had contracts and continue to have contracts with customers throughout the United States.

50. Defendants have known about these contracts, and have intended to and, using improper means, have intentionally induced SSI customers, and customers of the Class Members, to breach their contracts with SSI and the Class Members by engaging in the conduct and making the misrepresentations alleged above.

51. As a result of Defendants' actions herein alleged, SSI and the Class Members have suffered damages in an amount to be determined at trial.

52. Defendants' actions were and are the result of willful and malicious or intentionally fraudulent conduct, or conduct that manifests a knowing and reckless indifference toward, and a disregard of the rights of Plaintiff and the Class so as to justify the assessment of increased, exemplary, and punitive damages against Defendants in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

## (INJURIOUS FALSEHOOD)

### (On Behalf of Plaintiff and the Class)

53.   Plaintiff repeats and realleges all prior allegations as though fully pled herein.

54.   Plaintiff brings this claim individually and on behalf of all Class Members.

55.   The customers who heard the statements alleged herein understood the statements to be about SSI and other Class Members, and were encouraged by these statements to disassociate with SSI.

56.   The statements made by Defendants were and are false, and Defendants knew the statements to be false at the time they were made.

57.   Defendants have intended to injure SSI, and Class Members, by publishing these statements, or reasonably should have expected that the statements would injure SSI, and Class Members.

58.   As a result of APT's actions herein alleged, SSI and the Class Members have suffered actual damages in an amount including lost contracts.

59.   Defendants' actions were and are the result of willful and malicious or intentionally fraudulent conduct, or conduct that manifests a knowing and reckless indifference toward, and a disregard of the rights of Plaintiff and the Class so as to justify the assessment of increased, exemplary, and punitive damages against Defendants in an amount to be determined at trial.

### FIFTH CAUSE OF ACTION
### (SLANDER)

**(On Behalf of Plaintiffs and the Class)**

60.   Plaintiff repeats and realleges all prior allegations as though fully pled herein.

61.   Plaintiff brings this claim individually and on behalf of all Class Members.

62.   The customers who heard the statements alleged herein understood the statements

to be about SSI and other Class Members, and were encouraged by these statements to disassociate with SSI.

63. The statements made by Defendants were and are false, and Defendants knew and knows these statements were false, or at minimum Defendants failed to use reasonable care to determine whether the statements were true or false. Regardless, Defendants' conduct was undertaken with reckless indifference to the interests and rights of SSI and the Class Members.

64. As a result of APT's actions herein alleged, SSI and the Class Members have suffered damages in an amount to be determined at trial.

65. Defendants' actions were and are the result of willful and malicious or intentionally fraudulent conduct, or conduct that manifests a knowing and reckless indifference toward, and a disregard of the rights of Plaintiff and the Class so as to justify the assessment of increased, exemplary, and punitive damages against Defendants in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

### UNJUST ENRICHMENT

#### (On Behalf of Plaintiffs and the Class)

66. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

67. Plaintiff brings this claim individually and on behalf of all Class Members.

68. Defendants, through misleading representations and omissions, have induced customers of the Plaintiff and Class members to cancel their contracts and enter into contracts with Defendants.

69. By its wrongful acts, Defendants have been unjustly enriched at the expense of,

and to the detriment of, Plaintiff and members of the Class.

70. Defendants have benefitted financially from the revenues and other compensation tied to the acquisition of customer accounts from plaintiff and Class Members, which was unjust in light of Defendants' wrongful conduct.

71. Under the circumstances, it would be against equity and good conscience to permit Defendants to retain the ill-gotten benefits they received as the result of its deceptive marketing and advertising practices.

72. Because Defendants' retention of the non-gratuitous benefit conferred on them is unjust and inequitable, Plaintiff seeks restitution and an order from the Court disgorging all profits, benefits and other compensation obtained by Defendants due to their wrongful conduct.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues.

**WHEREFORE**, Plaintiff, on behalf of itself and the Class, pray for judgment as follows:

(a) Declaring this action to be a proper class action and certifying Plaintiff as the representative of the Class under Rule 23 of the FRCP;

(b) Entering preliminary and permanent injunctive relief against Defendants, directing Defendants to correct their practices and to comply with unfair and deceptive trade practices statutes nationwide, including Connecticut and Utah unfair trade practices and unfair competition laws;

(c) Awarding monetary damages, including treble damages;

(d) Awarding punitive damages;

(e) Awarding Plaintiffs and Class Members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiff's attorneys and experts, and reimbursement of Plaintiff's expenses; and

(f) Granting such other and further relief as the Court may deem just and proper.

Dated: August 24, 2018

**HARPER LAW, PLC**

*/s/     Jon V. Harper*
Jon V. Harper (#1378)

**THE SULTZER LAW GROUP P.C.**
Jason P. Sultzer, Esq.
Joseph Lipari, Esq.
Adam Gonnelli, Esq.
Jeremy Francis, Esq.

*Counsel for Plaintiff and the Class*