IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| SECURITY SYSTEMS, INC, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>ALDER HOLDINGS, LLC, and ALARM PROTECTION TECHNOLOGY, LLC,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER ON MOTIONS TO DISMISS**<br><br>Case No. 2:18-cv-00664<br><br>Judge Clark Waddoups |

Before the court are Defendant's Rule 12(b)(6) Motion to Dismiss (ECF No. 10) and Defendants' Motion to Dismiss and Strike Damages Class Action Allegations, (ECF No. 11). Having carefully reviewed the Complaint, the pleadings and the law, and being fully informed, the court GRANTS in part and DENIES in part the Rule 12(b)(6) Motion to Dismiss and GRANTS the Motion to Dismiss and Strike Damages Class Action Allegations.[1]

## BACKGROUND

Plaintiff is a Connecticut corporation that sells, services, and monitors residential and commercial security alarm systems throughout the United States. Plaintiff alleges that Alder Holdings, LLC is the alter ego of Alarm Protection Technology, LLC (APT), and that APT falsely misrepresented to at least 38 of plaintiff's customers in at least eight states that (1) plaintiff had gone out of business, (2) plaintiff had assigned its accounts to APT, (3) plaintiff

---

[1] Pursuant to civil rule 7-1(f) of the United States District Court for the District of Utah Rules of Practice, the court elects to determine the motion on the basis of the written memoranda and finds that oral argument would not be helpful or necessary. *See* DUCivR 7-1(f).

1

could not adequately monitor the customer's alarm, and/or (4) plaintiff no longer services the area in which the customer lives. As a result, plaintiff alleges that its customers were fraudulently induced to cancel their contracts with plaintiff. Plaintiff brings a claim for violation of the Connecticut Unfair Trade Practices Act, and claims for unfair competition, intentional interference with economic relations, injurious falsehood, slander, and unjust enrichment under Utah law. Plaintiff also claims that defendants made the same false representations to customers of other security alarm and monitoring businesses throughout the United States and seeks class action resolution for injunctive relief and damages.

Defendants' Rule 12(b)(6) motion seeks dismissal of the Connecticut Unfair Trade Practices Act and the unjust enrichment claim for failure to state a claim upon which relief can be granted, and dismissal of the remaining Utah state law claims "sounding in fraud" for failure to plead with particularity under Rule 9(b) of the Federal Rules of Civil Procedure. Defendants' also seek to dismiss and strike the class action damages allegations for failure to satisfy the requirements of Rule 23(b)(3) of the Federal Rules of Civil Procedure.

## DISCUSSION

### 1. Jurisdiction

"Subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (quoting *United States v. Cotton*, 535 U.S. 625, 630 (2002). Consequently, courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Id.* The Complaint alleges that this court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because (1) the class

action involves more than 100 class members, (2) plaintiff is a corporation incorporated in Connecticut and defendants are corporations incorporated in Utah, and (3) the amount in controversy exceeds $5,000,000, exclusive of interests and costs. (Compl. ¶ 6, ECF No. 2.) Plaintiff incorrectly asserts a corporation status for the defendant LLCs. Unlike a corporation, which is "a citizen of its state of incorporation and the state where its principal place of business is located," *Grynberg v. Kinder Morgan Energy, L.P.*, 805 F.3d 901, 905 (10th Cir. 2015), an LLC is an unincorporated association or entity. And ordinarily, "[d]iversity jurisdiction in a suit by or against [an] entity depends on the citizenship of all [its] members." *Americold Realty Trust v. Conagra Foods, Inc.*, 136 S. Ct. 1012, 1015 (2016) (quoting *Carden v. Arkoma Assoc.*, 494 U.S. 185, 195–96 (1990)). Moreover, "where an LLC has, as one of its members, another LLC, the citizenship of unincorporated associations must be traced through however many layers of partners or members there may be to determine the citizenship of the LLC." *Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 n.16 (3d Cir. 2015) (quoting *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 420 (3d Cir. 2010)).

Under the Class Action Fairness Act, however, only minimal diversity is required. 28 U.S.C. § 1332(d)(2)(A) (diversity is met if "*any* member of a class of plaintiffs is a citizen of a State different from *any* defendant.") (emphasis added); *Bartels by and through Bartels v. Saber Healthcare Group, LLC*, 880 F.3d 668, 673 n.2 (4th Cir. 2018). Additionally, "Under CAFA, unincorporated associations—including limited liability companies—are citizens of the state under whose laws they are organized and of the state where their principal place of business is located." *Id.*; 28 U.S.C. § 1332(d)(10). Plaintiffs allege that defendants are "incorporated and headquartered in Utah." (Compl. ¶ 7, ECF No. 2.) For purposes of this opinion, the court

assumes that plaintiff has adequately alleged that the defendant LLCs are organized under Utah law. Thus, the court finds that there is minimal diversity and the Complaint appears to adequately allege subject matter jurisdiction.

**2. Connecticut Unfair Trade Practices Act**

Plaintiff fails to state a claim for relief under the Connecticut Unfair Trade Practices Act (CUTPA). Conn. Gen. Stat. Ann. § 42-110a *et seq*. CUTPA prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." *Id.* at § 42-110b(a). Section 41-110a(4) explains that "trade" and "commerce" means the "advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services and any property tangible or intangible, real, personal, or mixed, and any other article, commodity, or thing of value *in this state*." (Emphasis added.)   The parties dispute whether the alleged wrongful actions meet this definition.

Connecticut courts "have held that CUTPA does not require that a violation actually occur in Connecticut," but do require that the violation be either "tied to a form of trade or commerce intimately associated with Connecticut," or that Connecticut law applies "where Connecticut choice of law principles are applicable." *Victor G. Reiling Assocs. & Design Innovation, Inc. v. Fisher-Price, Inc.*, 406 F. Supp. 2d 175, 200 (D. Conn. 2005).

     *a. Intimately Associated*

Plaintiff argues that because it is headquartered in Connecticut, has customers in Connecticut, and was subjected to economic injury in Connecticut, defendants' alleged misconduct is "tied to a form of trade or commerce intimately associated with Connecticut." *Reiling*, 406 F. Supp. 2d at 200.  Plaintiff has not, however, alleged that any unfair activity or

4

misconduct occurred within the State of Connecticut or to its Connecticut customers. Instead, it alleges that defendants made certain misrepresentations in Alabama, Arizona, Texas, Louisiana, Tennessee, Arkansas, Florida, and Georgia. (Compl. ¶ 11, ECF No. 2.) In *Reiling*, the fact that plaintiff was incorporated and headquartered in Connecticut—and thus felt any alleged economic injury in that state—was insufficiently tied or intimately associated with Connecticut when the alleged misconduct took place in another state. 406 F. Supp. 2d at 200. The cases cited by plaintiffs do not persuade the court otherwise. Although several of them contain language suggesting that economic harm or impact felt in Connecticut satisfies CUTPA, the facts of each case clarify that much more Connecticut connection was required for that conclusion than merely being headquartered, incorporated or feeling harm there.[2] In each case, the defendant was either located in Connecticut or the defendant purposefully reached out to Connecticut as part of its wrongful activity. Plaintiff has not alleged any such facts. *Reiling* confirms the court's conclusion.

      b. *Choice of Law Principles*

Courts "ordinarily must apply the choice-of-law rules of the State in which it sits." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 244 n. 8 (1981); *see also U.S. Aviation Underwriters, Inc. v.*

---

[2] *See Country Club Assocs. v. Shaw's Supermarkets, Inc.*, 2009 U.S. Dist. LEXIS 45836 (D. Conn. May 29, 2009) (CUTPA applied where deceptive actions were taken by a Connecticut partnership, involving Mississippi leases prepared in and sent from Connecticut, and money was transmitted to Connecticut); *Titan Sports, Inc. v. Turner Broadcasting Sys.*, 981 F. Supp. 65, 71 (D. Conn. 1997) (CUTPA applied where allegedly deceptive television programs that originated in Georgia "air in Connecticut, their pay-per-views are broadcast in Connecticut, Connecticut residents call the 900-number hot line and Plaintiff has its principal place of business in Connecticut); *Conn. Pipe Trades Health Fund v. Philip Morris, Inc.*, 153 F. Supp.2d 101, 107 (D. Conn. 2001) (CUTPA applied where deceptive advertisement and sales occurred in Connecticut and harmed Connecticut residents, notwithstanding that advertising originated in New York); *ICG AM, Inc. v. Wine of the Month Club, Inc.*, 2009 U.S. Dist. LEXIS 77151, *38-40 (D. Conn. Aug. 28, 2009) (CUTPA applied where defendant sold its products in Connecticut and directed four cease and desist letters to plaintiff's Connecticut offices); *Edwards v. N. Am. Power & Gas, LLC*, 120 F. Supp. 3d 132, 145 (D. Conn. 2015) (Connecticut connection to CUTPA was not at issue where plaintiff purchased electricity from defendants in Connecticut).

*Pilatus Bus. Aircraft, Ltd.*, 582 F.3d 1131, 1143 (10th Cir. 2009) ("A federal court applies the choice of law rules of the state in which the district court sites.") Utah has adopted "the most significant relationship approach" of Restatement (Second) Conflict of Laws § 145(a) (1971) to determine what law will apply to a tort claim. *Waddoups v. Amalgamated Sugar Co.*, 2002 UT 69, ¶ 18. Under this section, the court must first "characterize the nature of the claim." *Id.* at ¶ 15. Here, the CUTPA allegations are based on alleged false statements to plaintiff's customers. Based on plaintiff's allegations, sections § 149 (Defamation) and § 151 (Injurious Falsehood) of Restatement (Second) Conflict of Laws apply. *See Waddoups*, 2002 UT 69, ¶ 18 (identifying that the nature of the torts pled has an impact on the applicability of other factors in the Restatement). Both sections § 149 and § 151 provide that the local law of the state where publication occurs is the applicable law. That means that Utah would be required to apply the law of each of the states where the statements were alleged to occur—Alabama, Arizona, Texas, Louisiana, Tennessee, Arkansas, Florida, and Georgia. Connecticut law would not be applicable under Utah choice of law rules.

Plaintiff argues that the Restatement (Second) Conflict of Laws rules for standard torts should apply, which it claims favors the application of Connecticut law. Without explaining why the more specific rules applicable to defamation and injurious falsehood would not apply, plaintiff argues that the factors to be weighed under the standard test for the "most significant relationship" are: (1) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicil, residence, nationality, place of incorporation and place of business of the parties; and (d) the place where the relationship, if any, between the parties is centered." Restatement (Second) Conflict of Laws § 145(2) (1971), quoted in

*Waddoups*, 2002 UT 69, ¶ 18. Plaintiff alleges that the first factor favors Connecticut because that is where plaintiff is headquartered and where the economic consequences of the alleged misconduct were felt. This factor, however, also points to each of the eight states where the misstatements were made because that is where plaintiff's reputation would have been harmed. Plaintiff acknowledges that the second factor favors applying the law of states other than Connecticut, because that is where the conduct occurred, but argues that this should not be given significant weight. Plaintiff alleges that the third factor suggests that either Connecticut or Utah law would apply, but that because defendants do not "contend that Utah law should apply," this factor favors Connecticut. Defendants, however, agreed that either Connecticut or Utah law would apply. Finally, plaintiff alleges that the fourth factor favors Connecticut, because "to the extent there is a relationship between the parties, it arose from the harm caused by [defendants] to [plaintiff] in Connecticut." (Opp'n at 5, ECF No. 17.) At the same time, however, it acknowledges that the only communication between the parties was directed by plaintiff to defendants in Utah. A relationship, if any exists, was directed to Utah, rather than to Connecticut. Thus, the court holds that the general factors do not favor the law of any particular state, and the more specific Restatement instructions favor the application of the laws in the states where the alleged misstatements were made. Therefore, Connecticut law does not apply because no alleged misstatements occurred in Connecticut. Utah choice of law rules do not allow for the application of the CUTPA.

The court dismisses claim one under the Connecticut Unfair Trade Practices Act for failure to state a claim upon which relief can be granted, because the allegations are not "tied to a

7

form of trade or commerce intimately associated with Connecticut," and/or because Connecticut law does not apply under Utah choice of law principles.

   3. **Unjust Enrichment**

Plaintiff fails to state a claim for relief for unjust enrichment because it failed to allege that it conferred a benefit upon defendants. A claim for relief based upon unjust enrichment must contain three separate elements:

> First, there must be a benefit conferred on one person by another. Second, the conferee must appreciate or have knowledge of the benefit. Finally, there must be the acceptance or retention by the conferee of the benefit under such circumstances as to make it inequitable for the conferee to retain the benefit without payment of its value.

*Desert Miriah, Inc. v. B & L Auto, Inc.*, 2000 UT 83, ¶ 13; *see also Allen v. Hall*, 2006 UT 70, ¶ 26. As to the first element, plaintiff merely alleges that customers cancelled their contracts with plaintiff and signed new contracts with defendants, so that "Defendants have benefitted financially from the revenues and other compensation tied to the acquisition of" these customers. (Compl. ¶ 70, ECF No. 2.)

Under Utah law, a party cannot satisfy the first element of unjust enrichment if the party did not confer a benefit on the alleged recipient. *See, e.g. MediaNews Grp. Inc. v. McCarthey*, 432 F. Supp. 2d 1213, 1239 (D. Utah 2006) (holding that the defendants could not prevail on an unjust enrichment claim because the defendants alleged that a third party—not the defendants— conferred a benefit upon the alleged recipient); *Am. Towers Owners Ass'n v. CCI Mech., Inc.*, 930 P.2d 1182, 1193 (Utah 1996), overruled on other grounds by *Davenport at Pilgrims Landing Homeowners Ass'n v. Davencourt at Pilgrim's Landing, LC*, 2009 UT 65 ("The Association did not confer any benefit upon any of the defendants and therefore cannot claim that the defendants

8

have been unjustly enriched."). Plaintiffs conferred no benefit on defendants because any financial benefit they received came from a third party, the customers, rather than from plaintiff.

Plaintiffs cite to two price fixing cases from district courts in California and Pennsylvania for the proposition that a plaintiff who indirectly confers a benefit on a defendant has sufficiently pleaded a claim for unjust enrichment, suggesting that it similarly conferred an indirect benefit on defendants.[3] The court does not find these cases persuasive, in part because the factual situations are very different (i.e. plaintiff here is not a down-chain purchaser of price-fixed products), and in part because contrary to plaintiff's representation, one of the cases actually states that Utah law requires the conferral of a direct, rather than indirect, benefit to state a claim for unjust enrichment. Plaintiff also cites from *Emergency Physicians Integrated Care v. Salt Lake Cty.*, 2007 UT 72, ¶ 26, that "[t]he first element . . . requires the court to measure the benefit conferred on the defendant by the plaintiff. . . .The benefit conferred satisfies this requirement if the defendant's retention of the benefit would be unjust without providing compensation." Plaintiff fails to explain how this statement of the law from *Emergency Physicians* applies in its case. In *Emergency Physicians*, a county chose to seek services for inmates from plaintiff, such that the county was not a passive third party to plaintiff's relationship with the inmates. Because the county had constitutional and statutory duties to provide care, the county directly benefitted by outsourcing its duty to treat inmates to the

---

[3] *In re Processed Egg Prods. Antitrust Litig.*, 851 F. Supp. 2d 867, 934 (E.D. Pa. 2012) (plaintiffs who purchased eggs from egg suppliers who were sold the overpriced eggs by defendant egg producers adequately pled the first element of an unjust enrichment claim against the producers); *In re Packaged Seafood Prods. Antitrust Litig.*, 242 F. Supp. 3d 1033, 1093 (S.D. Cal. 2017) (holding that Utah law requires a direct benefit to be conferred, but that defendants directly benefitted from their price-fixing scheme where plaintiffs paid higher prices).

9

plaintiff providers. *Id.* at ¶ 27. Here, plaintiff is nothing but a passive third party to the relationship between defendants and their allegedly poached customers.

Plaintiff also seeks to distinguish *American Towers* by suggesting that the court there determined that an unjust enrichment claim was not appropriate because the defendant designers and contractors "did not benefit in any way at the expense of the plaintiff [condo association], even indirectly." (Opp'n at 8, ECF No. 17.) In essence, plaintiff's formulation of the law is that receipt of a benefit at another's expense satisfies the first element of an unjust enrichment claim if it is unjustly retained. (*Id.*) The missing piece of plaintiff's formulation, however, is the existence of any action or service *performed by plaintiff* that results in a benefit being conferred on defendants. Plaintiff's role in the allegations here is incidental to any benefit their former customers conferred on defendants. Case law is clear that it is the claimant who must confer the benefit, and there is no such allegation here. *See MediaNews Group, Inc. v. McCarthey*, 432 F. Supp.2d at 1239. *See also Berrett v. Stevens*, 690 P.2d 553, 557 (Utah 1984) ("It must first be determined whether a benefit has been conferred on [the party allegedly retaining the benefit] by [the party claiming unjust enrichment]."); *Knight v. Post*, 748 P.2d 1097, 1100 (Utah Ct. App. 1988) (same). The court dismisses count six of the Complaint for failure to state a claim for relief for unjust enrichment.

### 4. Federal Rule of Civil Procedure 9(b) Claims

Plaintiff's claims two (unfair competition), three (intentional interference with economic relations), four (injurious falsehood), and five (slander) all "sound in fraud" and are not

adequately pled with particularity under Federal Rule of Civil Procedure 9(b).[4] Each of these claims, regardless of their specific labels, are based on the same core allegations of deception, false misrepresentations, and fraudulent conduct. (*See* Compl., ECF No. 2.) By its own terms, "Rule 9(b) applies to all averments of fraud. This wording is cast in terms of the conduct alleged, and is not limited to allegations styled or denominated as fraud or expressed in terms of the constituent elements of a fraud cause of action." *Matthews v. LaBarge, Inc.*, 2009 WL 3673087, at *1 n.2 (N.D. Okla. Nov. 2, 2009).

An unfair competition claim under Utah law can consist of allegations that a purchaser has been misled to induce a purchase of one product or service instead of another. *See Overstock.com, Inc. v. SmartBargains, Inc.*, 192 P.3d 858, 863 (Utah 2008). The sole basis for plaintiff's second cause of action is alleged misstatements by defendant's representatives to plaintiff's customers to induce cancellation of plaintiff's services in favor of defendants' services. Rule 9(b) applies to this claim.

Where "fraudulent misrepresentation is the lynchpin" of a claim for tortious interference, Rule 9(b) also applies. *Purac Am. Inc. v. Birko Corp.*, 2015 WL 1598065, at *6 (D. Colo. Apr. 8, 2015) (quoting *N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale*, 567 F.3d 8, 14 (1st Cir. 2009)). Plaintiff's third cause of action is based on allegations that defendants, "using improper means, have intentionally induced [plaintiff's] customers, and customers of the Class Members, to breach their contracts . . . by engaging in the conduct and making the misrepresentations above." (Compl. ¶ 50; ECF No. 2.) Because plaintiff's theory of this claim

---

[4] Defendants also allege that claim one (CUTPA) is required to be pled with particularity and did not meet that standard; however, this court has dismissed that claim on other grounds.

relies on defendants' fraudulent misstatements to induce customers to end their relationships with plaintiff, plaintiff must satisfy the pleading requirements of Rule 9(b).

Plaintiff's fourth cause of action, injurious falsehood, requires plaintiff to prove "(a) falsity of the statement made, (b) malice by the party making the statement, and (c) special damages." *Farm Bureau Life Ins. Co. v. Am. Nat. Ins. Co.*, 505 F. Supp. 2d 1178, 1191 (D. Utah 2007). Because this claim requires proof of a false statement, this claim sounds in fraud and Rule (b) applies. Similarly, plaintiff's fifth cause of action, slander, is also based on the same misstatements and must be pled with particularity in the same way as a defamation claim under Utah law. *See, e.g.*, *Rowe v. DPI Specialty Foods, Inc.*, 2015 WL 13047675, *3–*4 (D. Utah August 20, 2015).

The court is not persuaded by plaintiff's arguments that its claims are not grounded in fraud and not subject to the heightened pleading requirements of 9(b), nor is it persuaded that counsel accurately represented the case law it cited in support of its arguments. The court is also not persuaded by plaintiff's argument that even if Rule 9(b) applies to its claims, it has met the heightened pleading standard.

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This requires "a complaint alleging fraud to 'set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof.'" *Koch v. Koch Industries, Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000) (quoting *Lawrence Nat'l Bank v. Edmonds (In re Edmonds)*, 924 F.2d 176, 180 (10th Cir. 1991). Plaintiff's Complaint alleges no dates or even time frames for the alleged misconduct, alleges only the states where alleged misconduct occurred rather than

specific locations within the states, fails to identify the party making the false statements or to whom the false statements were made, and does not identify which allegedly false statements were made to which customers, nor what the consequences were for each customer to whom such statements were made, and how that is related to plaintiff's claims. Plaintiff attached to its opposition memorandum an affidavit that purports to demonstrate that if the court grants leave to amend the Complaint, plaintiff could plead these claims with particularity. (ECF No. 17-1.) The court is not yet persuaded that the plaintiff's affidavit sets forth facts sufficient to meet the requirements of Rule 9(b). Defendants urge the court to dismiss the claims because plaintiff has not adequately moved to amend the Complaint and failed to attach a copy of its proposed amended Complaint to a proper motion.

After careful consideration, the court grants plaintiff leave to file, within 30 days of this decision and in compliance with local rules, a motion to amend the Complaint to plead with particularity its claims for unfair competition, intentional interference with economic relations, injurious falsehood, and slander. The motion must be accompanied by plaintiff's proposed amended Complaint. If plaintiff fails to plead these claims with particularity, the court will consider a properly filed opposition memorandum by defendants alleging futility.

### 5. Damages allegations under Rule 23(b)(3) Federal Rule of Civil Procedure

Under Rule 23 of the Federal Rules of Civil Procedure, "[a] class action may be maintained if Rule 23(a) is satisfied and if: . . . (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. Rule 23(b)(3). Plaintiff's class action damages

allegations fail to show that the questions of law or fact common to potential class members predominates over questions affecting only individual members and that a class action is a superior means of adjudicating the alleged controversy.

In the Tenth Circuit, "[t]his predomination requirement makes sense in a Rule 23(b)(3) context because these cases generally involve highly individualized claims or require an individualized plaintiff-by-plaintiff determination of monetary damages." *J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1298 (10th Cir. 1999). "The predominance test is not a numerical test and does not require the court to add up the common issues and the individual issues and determine which is greater." *United Food & Commercial Workers Union v. Chesapeake Energy Corp.*, 281 F.R.D. 641, 655 (W.D. Okla. 2012) (internal citations omitted), "Instead, the Court must determine whether the members of the class seek a remedy to a common legal grievance and whether the common questions of law and fact central to the litigation are common to all class members." *Id.* (internal citations omitted). "Class wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject to only individualized proof." *Id.*[5] "Claims alleging

---

[5] *See also Baum v. Great Western Cities, Inc. of New Mexico*, 703 F.2d 1197, 1210 (10th Cir. 1983) (Upholding district court's order granting motion to dismiss the alleged class action and to strike the class action allegations from the complaint because
> "[w]hile it appears that the central question of what was represented to purchasers of subleasehold interests at Cochiti Lake may be the common issue that could well be determined in the context of a class action, it is not at all evident that the general common issue would predominate over the potentially vexing issues of reliance and the various statutes of limitations. Because there are substantial doubts as to whether plaintiffs will be able to satisfy the 'predominance' requirement even after extensive discovery on the class action issue,

misrepresentations contained in 'written documents addressed to the class as a whole *rather than an individualized sales pitch*' are likely to predominate over individual issues." *Id.* at 656 (internal citations omitted) (emphasis added). Relatedly, "although having some common core, a fraud cause may be unsuited for treatment as a class action if there was material variation in the representations made or in the kinds or degrees of reliance by the persons to whom they were addressed." *Edgington v. R.G. Dickinson & Co.*, 139 F.R.D. 183, 191 (D. Kan. 1991).

Plaintiff's Complaint is based almost exclusively on alleged fraudulent misrepresentations made to customers. While the Complaint sets these forth in a generally uniform manner, the court has already determined that these allegations have not been pled with sufficient particularity under Rule 9(b). Review of plaintiff's affidavit in support of its argument that it has the ability to plead its claims with particularity reveals that the alleged misrepresentations were individualized sales pitches by different sales representatives throughout the United States to some of plaintiff's customers. The customers relied on them differently and had different outcomes that affected the plaintiff in different ways. Based on the allegations, the court can only assume that such individualized sales pitches were similarly made to the customers of the potential class members. The individual questions pertaining to each potential member thus predominate over common questions of fact or law because the court will be required to assess what statements were made to whom by whom, and to what extent each customer relied on each statement and was subsequently damaged.

> the risk of unfair expense to both defendants and the named individual plaintiffs should it eventually be determined that the suit cannot proceed as a class action is another factor weighing against a finding that the class action is "superior" to the proposed arbitration program.").

Plaintiff argues that it is premature to dismiss its class action damages allegations because class certification discovery has not taken place. Based on the allegations in the Complaint and in plaintiff's affidavit alleging that it can plead its claims with particularity, however, the court cannot imagine that class certification discovery will eliminate the individual sales pitches and individual reliance issues that already predominate over the class issues with respect to damages. Plaintiff's argument is well taken with respect to its class action injunctive relief claims, where the alleged "uniform scheme . . . to mislead, deceive, and ultimately poach customers" likely meet this standard. But in the context of damages claims, the individual sales pitches, individual reliance issues, and the variety of ways in which each consumer was damaged based on these differences strongly suggest that individual facts predominate over class facts.

Furthermore, at least eight states' substantive laws will be applicable to class members' claims. Class certification discovery is likely to expand that number, not reduce it. "In a multi-state class action suit, determining which state's or states' substantive laws will apply to putative class members' claims, as a practical matter, can be the determinative issue for purposes of a predominance analysis." *Woodard v. Fid. Nat. Title Ins. Co.*, 2008 WL 5737364, at *3 (D.N.M. Dec. 8, 2008). Differences in each state's substantive law "would require a consideration of individualized proof." *Morris v. Davita Healthcare Partners, Inc.*, 308 F.R.D. 360, 377 (D. Colo. 2015). Here, the only claims that survive this decision are plaintiff's unfair competition, intentional interference with economic relations, injurious falsehood, and slander claims (in addition to the class action injunctive relief claim). While the various states' law on these claims may or may not vary greatly, and thus cannot yet be said to be the determinative issue in this analysis, it is nevertheless a factor that weighs against plaintiff and in favor of the court's

conclusion that individual issues of fact and law predominate over class issues with respect to damages.

Additionally, plaintiff has not demonstrated that a class action lawsuit is a superior method for resolving the damages issues. In the Tenth Circuit, "'class treatment is superior [when] it will achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Morris*, 308 F.R.D. at 375 (quoting *CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076, 1096 (10th Cir. 2014). "Superiority is determined by comparing the efficiency and fairness of all available methods of adjudicating the matter." *Porcell v. Lincoln Wood Prod., Inc.*, 713 F. Supp. 2d 1305, 1325 (D.N.M. 2010) (internal citations omitted). "Under the superiority test of Rule 23(b)(3), a class action *must be better than, not merely as good as, other methods* of adjudication." *Id.* (internal citations omitted) (emphasis added). Another noted example of when a class action "is a superior method of adjudicating" a case is when class members "to date have shown no interest in controlling the litigation of separate actions and because no other litigation regarding this controversy has been commenced." *Pliego v. Los Arcos Mexican Restaurants, Inc.*, 313 F.R.D. 117, 127 (D. Colo. 2016).

Plaintiff's Complaint acknowledges that another security alarm monitoring company brought a separate action against defendants in Alaska and litigated that case to its end. (Compl. ¶ 14, ECF No. 2.) The court is aware of multiple other actions in this district against defendants for similar conduct. This demonstrates that potential class members have shown a strong interest in controlling litigation in separate lawsuits, and that therefore, at least as to the damages claims,

a class action is not a superior method of adjudicating these claims. Plaintiff argues that prior individual lawsuits have not deterred defendant's alleged bad acts and thus a class action is a superior method to combat the misconduct. This may be a valid argument with respect to its injunctive relief cause of action. With respect to the damages allegations, however, the individualized sales pitches and the individualized reliance issues, which the court cannot imagine becoming anything but more complex if additional class certification discovery is taken, persuade the court that a class action lawsuit is not the superior method of determining damages claims.

Accordingly, the court strikes plaintiff's class action damages allegations and dismisses the claim for a class action seeking damages.

## CONCLUSION

For the reasons stated above, the court GRANTS in part and DENIES in part Defendant's Rule 12(b)(6) Motion to Dismiss (ECF No. 10) and GRANTS Defendants' Motion to Dismiss and Strike Damages Class Action Allegations, (ECF No. 11).

DATED this 3rd day of October, 2019.

BY THE COURT:

_____
Clark Waddoups
United States District Court Judge